UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASHLEY MOODY,

    Plaintiff,

v.

CALEB HUNTER FREESTONE,
*et al.*,

    Defendants.

Case No. 8:23-cv-701-SDM-MRM

### DEFENDANT CALEB FREESTONE'S *OPPOSED* MOTION TO STAY THESE PROCEEDINGS PENDING THE OUTCOME OF HIS PARALLEL CRIMINAL CASE

When a plaintiff files a civil claim related to rulings that will likely be made in a pending criminal trial, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). Mr. Freestone, through his undersigned counsel, respectfully requests that the Court stay these proceedings until his parallel criminal case in this District has ended. As grounds, Mr. Freestone states as follows:

I.      FACTUAL AND PROCEDURAL BACKGROUND

This civil lawsuit is brought pursuant 18 U.S.C. 248, the Freedom of Access to Clinic Entrances Act ("FACE Act"). (Doc. 9). Pursuant to the FACE Act, the Attorney General has sued Mr. Freestone and others for allegedly "damag[ing] and destroy[ing]" the property—through graffiti—of these facilities: the South Broward Pregnancy Help Center in Hollywood, Florida; the LifeChoice crisis pregnancy center in Winter Haven, Florida; and the Heartbeat of Miami pregnancy center in Hialeah, Florida. (*Id.* ¶¶ 23, 27, 32). According to the operative complaint, Mr. Freestone and the other defendants' actions constituted threats and intimidation contemplated by the FACE Act because those facilities "provided reproductive health services." (*Id.* ¶¶ 40–41, 55–56, 69–70). The Attorney General seeks damages, penalties, and injunctive relief against Mr. Freestone and the other defendants for the alleged graffiti.

Before the institution of this lawsuit, Mr. Freestone was indicted in this District with the other civil defendants for purportedly violating the FACE Act—which carries civil and criminal penalties—for the same conduct alleged in this civil lawsuit. *United States v. Freestone, et al.*, Case No. 8:23-

2

cr-25 (M.D. Fla.) ("Criminal Action"); (*see* Doc. 19 & 19-1).[1] The federal government alleges in the Criminal Action that Mr. Freestone, and the other civil defendants, spray painted the same facilities in Hollywood, Winter Haven, and Hialeah referenced in this civil action. (Doc. 19-1 at 3). Due to the identical factual issues in the parallel Criminal Action, and the fact that the other defendants would also invoke their Fifth Amendment privilege due to their own criminal jeopardy in the Criminal Action, Mr. Freestone requests that the Court stay this matter pending the outcome of the Criminal Action.

## II.     MEMORANDUM OF LAW

Discovery and trial here would prejudice Mr. Freestone's Fifth Amendment right to be free from defending against a civil proceeding while defending the Criminal Action. Requests for production, requests for admission, depositions, and trial testimony in this civil case will inevitably seek to elicit evidence that Mr. Freestone engaged in the same alleged illegal activity that is the subject of the Criminal Action. If not deferred, the civil proceeding will undermine the accused's Fifth Amendment privilege against

---

[1] Mr. Freestone respectfully requests that the Court take judicial notice of the records in the Criminal Action, including the superseding indictment filed as Docket Entry 19-1 in this matter. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (court may take judicial notice of public filings "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"); *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records, such as a complaint filed in another court); *Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 n. 5 (11th Cir. 2014) (same).

self-incrimination, expand rights of discovery beyond the limits of Fed. R. Crim. P. 16, and attempt to expose the bases of Mr. Freestone's defense to the prosecution before the trial in the Criminal Action. On the other hand, viewing this from the plaintiff's and the Court's perspective, any civil discovery while the Criminal Action is pending would be frustrated and fruitless because of Mr. Freestone's Fifth Amendment invocation.

### A. Legal Standard.

To prevent prejudice to a defendant's rights under the Constitution and the rules of procedure, when a "civil action . . . is tied in a tight knot with a [potential] criminal prosecution," the clear practice in the circuits is to stay the civil action until after termination of the criminal matter. *Campbell v. Eastland*, 307 F.2d 478, 480 (5th Cir. 1962).[2] *See, e.g., Coney v. Anderson*, No. 8:22-CV-64-CEH-AAS, 2022 WL 419896 (M.D. Fla. Feb. 9, 2022) (where plaintiff would invoke the Fifth Amendment, and defendant police officer would invoke the law enforcement privilege, stay was warranted pending resolution of criminal matter); *Ventura v. Brosky*, 2006 WL 3392207, at *1–2 (S.D. Fla. Nov. 21, 2006) (staying and administratively closing civil case due

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

to parallel criminal proceeding against defendant police department employee who would invoke his Fifth Amendment rights).

Although courts have discretion to grant a stay of a civil case pending a criminal matter, in the interests of judicial efficiency or other factors, "[a] court *must* stay a civil proceeding pending resolution of a related criminal prosecution [. . .] when 'special circumstances' so require in the 'interest of justice.'" *United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (civil forfeiture context) (citing *United States v. Kordel*, 397 U.S. 1, 90 S. Ct. 763, 769–70 & n. 27 (1970)) (emphasis added).

The Eleventh Circuit has not established a strict set of factors that district courts must employ when determining whether "special circumstances" are met. Even so, district courts in this Circuit have held that the most important threshold issue is "whether a [party] in both a civil and criminal matter is 'forced to choose between waiving his privilege against self-incrimination or losing the civil case in summary proceedings.'" *Shell Oil Co. v. Altina Associates, Inc.*, 866 F.Supp. 536, 540 (M.D. Fla. 1994);*Love v. City of Lanett*, No. 3:09-cv-622-MEF, 2009 WL 2525371, at *2 (M.D. Ala. Aug. 17, 2009) ("the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay"); *Lay v.*1994); *Lay v. Hixon*, 2009 WL 1357384, at *4 (S.D. Ala. May 12, 2009) (staying civil proceeding in light of pending criminal

5

case with considerable factual overlap and presenting significant prejudice to moving party).

Courts have also routinely weighed the following secondary factors: the status of the case, including whether the defendants have been indicted; the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; the private interests of and burden on the defendants including the extent to which their Fifth Amendment rights are implicated; the interests of the courts; and the public interest. *Svistina v. Elbadramany*, No. 22-CV-20525, 2022 WL 1658840, at *2 (S.D. Fla. May 25, 2022); *Invs. v. Rothstein*, No. 10-60786-CIV, 2011 WL 2530945, at *1 (S.D. Fla. June 24, 2011); *Sec. & Exch. Comm'n v. Palleschi*, 2:21-CV-530-SPC-NPM, 2021 WL 4710773, at *1 (M.D. Fla. Sept. 24, 2021)

Each of these nonexhaustive factors is addressed in turn.

**1. There is complete overlap between the cases.**

The equities favor a stay pending the outcome of the Criminal Action.

To begin with, courts generally look to see whether an indictment or similar charging documents have been filed against the movant. *Pellegrino v. Wengert*, 147 F. Supp. 3d 1379, 1382 (S.D. Fla. 2015) (absence of an indictment weighs heavily against a stay). Here, the indictment in the Criminal Action was filed before this civil lawsuit, and a superseding indictment by the federal government preceded the Attorney General's

6

Amended Complaint. Comparing the indictment to the operative pleading here—as Mr. Freestone detailed in Section I above—this lawsuit stems from the identical facts alleged in the superseding indictment in the Criminal Action—that Mr. Freestone and his co-defendants allegedly spray painted several facilities in Hialeah, Hollywood—all outside this District—and in Winter Haven. (*Compare* 19-1 *with* Doc. 9). There is not a mere potentiality of overlapping issues and facts—this entire lawsuit is a mirror-image of the Criminal Action.

In *Tompkins-Holmes v. Gualtieri,* No. 8:17-CV-52-T-33AEP, 2017 WL 638663, at *2 (M.D. Fla. Feb. 16, 2017), the court found that the first factor only slightly weighed in favor of stay where a deputy was facing criminal proceedings of manslaughter while enduring a section 1983 lawsuit for excessive force stemming from the same incident. The court concluded that the elements for proving manslaughter and objective reasonableness for proving excessive force were different. *Id.* There, intent was important in the criminal case but not in the civil case. *See id.* Here, however, the elements are the same—both the Attorney General lawsuit and the Criminal Action question whether Mr. Freestone and others "intentionally" damaged or destroyed the property of the facilities at issue in the two parallel cases or "threatened" to intimidate the facilities' employees. (*Compare* 19-1 *with*, *e.g.*, Doc. 9 ¶¶ 53, 67, 70, 80, 95, 109). Given that the elements are identical, the

Court should find that the first factor—which courts have found to be the "most important threshold issue," *Love*, 2009 WL 2525371, at *2—weighs heavily in favor of a stay.

### 2. This case is in its infancy.

The second factor supports a stay as well. This case is in its infancy. The parties have only recently been served, to date no responsive pleadings have been filed, and the parties have jointly moved to toll such deadlines pending the Court's determination on this motion. (Doc. 27). *See Svistina*, 2022 WL 1658840, at *5 (second factor weighed in favor of stay because the case was only three months old, and a stay would be "the most effective use of judicial resources").

### 3. The Attorney General has no private interests, and a stay would benefit the public's interest; whereas Mr. Freestone would be deeply prejudiced without a stay.

The parties' interests also favor a stay pending the outcome of the Criminal Action.

To begin with, the Attorney General does not bring this suit on behalf of her own private interests, but rather "on behalf of the People of the State of Florida." (Doc. 9 PageID 49). Mr. Freestone's prejudice in having to defend this case concurrently with the Criminal Action and given the effects of concurrent actions on judicial economy, the public interest and Mr. Freestone's interest align in support of a stay. *See Doe 1 v. City of Demopolis*,

8

No. CIV A 09-0329-WS-N, 2009 WL 2059311, at *3 (S.D. Ala. July 10, 2009) (judicial economy benefits the public interest).

### i. Mr. Freestone would be prejudiced without a stay.

Here, Mr. Freestone would face extreme prejudice in being "forced to choose between waiving his privilege against self-incrimination or losing the civil case in summary proceedings." *Shell Oil.*, 866 F.Supp. at 540 (quoting *Pervis*, 901 F.2d 944). Mr. Freestone is alleged to have sprayed graffiti on several facilities—which allegations are the central facts here and in the Criminal Action. To his counsel's knowledge, besides Mr. Freestone's co-defendants, there are no other witnesses who can provide exculpatory evidence. (Doc. 19).  Therefore, unlike some other situations in which there is other evidence (*e.g.*, video, eyewitnesses), the outcome would be summary judgment rendered against Mr. Freestone because he anticipates invoking his Fifth Amendment privilege here. *See Baxter v. Palmigiano*, 425 U.S. 308, 317-19 (1976) (adverse inferences may be drawn against parties to a civil action as a result of their assertion of the Fifth Amendment privilege); *United States v. A Single Fam. Residence & Real Prop.*, 803 F.2d 625, 629 n. 4 (11th Cir. 1986) (general rule is that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."). With the assertion of the Fifth Amendment, there would be no genuine dispute as to any material

fact, making plaintiff entitled to summary judgment as a matter of law under Rule 56.

Further, Mr. Freestone and his co-defendants are charged with conspiracy in the Criminal Action (Doc. 19-1), providing each of them with even broader Fifth Amendment rights regarding a wide range of subject matter, including testimony about the other co-defendants' actions. *See, e.g., United States v. Metz*, 608 F.2d 147, 157 (5th Cir. 1979) (refusing to overturn the district court's determination that a defendant could not compel exculpatory testimony from his codefendant). In contrast, were Mr. Freestone to participate by testifying and producing documents in defending this case, those statements and evidence could be used in the Criminal Action. *See U.S. v. White*, 846 F.2d 678, 689 (11th Cir. 1998) (discussing how civil deposition transcripts were shared with DOJ spurring adverse criminal action against the defendants).[3] That decision could subject Mr. Freestone to loss of liberty by potentially being convicted as charged.

---

[3] The federal government's right of discovery in a criminal case is much more limited than the criminal defendant's right of discovery. *See* Fed. R. Crim. P. 16; *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 218CV01479KOBHNJ, 2019 WL 8014315, at *5 (N.D. Ala. Oct. 30, 2019) (parallel cases may undermine the Fifth Amendment privilege "by expanding rights of criminal discovery beyond the limits" of the federal criminal rules "by exposing the basis of the defense to the prosecution in advance of criminal trial, or by prejudicing the criminal case through other means") (quoting *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 400 (S.D. Tex. 2009)).

In *Gonzalez v. Israel*, the court granted a stay where there were parallel criminal and civil proceedings because, among other reasons, the only eyewitnesses capable of providing exculpatory testimony in the civil proceeding were the defendants, who would invoke their Fifth Amendment privilege. No. 15-CIV-60060, 2015 WL 4164772, at *3 (S.D. Fla. July 9, 2015); *cf. Tompkins-Holmes*, 2017 WL 638662, at *2 (denying a motion to stay because the movant failed "to explain why the defendants cannot rely on other testimony or evidence" if they invoked their Fifth Amendment privilege). In *Gonzalez*, the plaintiff sued several Broward Sheriff's Office deputies and Sheriff Israel, in his official capacity, for their conduct related to claims of excessive force and falsified police reports. 2015 WL 4164772, at *1. There, the deputies were criminally charged with falsification of records and battery. *Id.* The court looked to the operative complaint in that case to determine whether the deputies' Fifth Amendment invocation as to facts surrounding the charged acts would result in an unrebutted account of those facts—specifically the court found that the pleadings supported that those deputies "appear[ed] to be the only eyewitnesses to their interaction with Plaintiff potentially capable of providing exculpatory testimony in support of their defense." *Id.* at * 3. The allegations in the operative complaint suggest that Mr. Freestone and his co-defendants are the only alleged eyewitnesses to the acts alleged. (*See* Doc. 9). No other persons are identified, and no

11

potential sources of exculpatory evidence are addressed. (*Id.*). Here, Mr. Freestone intends to invoke his Fifth Amendment privilege and expects that his other co-defendants will do the same. For that reason, the equities justify a stay.

### ii. The interests of justice and judicial economy require a stay.

Even if the Court found that the preceding factors militated against a stay, the interests of justice otherwise support a stay. *See United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1990) (collecting multiple cases in which "[f]ederal courts deferred civil proceedings pending completion of parallel criminal prosecutions when the interests of justice seemed to require such action"); *United States ex rel. McFarland v. Fla. Pharmacy Sols.*, No. 8:15-CV-1708-T-23TGW, 2017 WL 10294799, at *1 (M.D. Fla. Aug. 7, 2017) (Merryday, J.). The Court's power to stay cases is part of its inherent authority "to control the disposition of the case on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936). As a sister-court recently noted, "[a]lthough the Constitution does not require a stay of these civil proceedings pending the outcome of the related criminal matter, the Court, in exercising its discretion, f[ound] that a stay [wa]s warranted in the interests of judicial efficiency and economy." *Matter of James Gang Charters,*

*LLC*, No. 8:20-CV-1859-CEH-JSS, 2021 WL 2228659, at *2 (M.D. Fla. May 10, 2021). By that inherent authority, "[c]ertainly . . . a court may stay a civil proceeding during the pendency of a parallel criminal proceeding." *U.S. v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983). Indeed, the courts recognize that a stay is most appropriately entered when a civil suit in a parallel case would threaten to disrupt the restrictions imposed on discovery by the criminal rules:

> In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters . . . a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases. While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive.

*Campbell*, 307 F.2d at 487. Forcing a defendant to admit or deny civil allegations that are the subject of a criminal prosecution conflicts with the structure of a criminal case, in which the defendant is presumed innocent and the government must satisfy the most exacting burden of proof. The State of Florida should not have a chance to leverage the liberal rules of civil discovery to help the federal government build a criminal case against Mr. Freestone when his liberty is on the line in a parallel criminal case. To deny a stay would create precisely the type of prejudice to substantial rights of a presumptively innocent party that the courts recognized in the *Campbell* case. As this Court stated in analyzing *Campbell*, a "defendant who

reasonably fears a criminal prosecution maintains a weighty Fifth Amendment interest against compelled self-incrimination, including self-incrimination that results from a statement compelled in a civil action." *McFarland*, 2017 WL 10294799, at *1 (Merryday, J.) (citing *Erwin v. Price*, 778 F.2d 668, 669 (11th Cir. 1985)); *see also Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084 (5th Cir. 1979) (finding an abuse of discretion to deny a "three-year hiatus" until all threat of criminal liability ended). Mr. Freestone faces "a Hobson's choice: either waive the Fifth Amendment right against compulsory self-incrimination and defend this civil action or invoke the Fifth Amendment and lose this civil action on summary judgment." *McFarland*, 2017 WL 10294799, at *1.

In *McFarland*, this Court found that the "interests of justice" favored a stay because the Fifth Amendment protection against compelled self-incrimination outweighed the speculative and marginal harms of delay. *McFarland*, 2017 WL 10294799, at *2. Here, the Attorney General stands to endure speculative harm, if any, at the cost of Mr. Freestone's potential liberty interests and his certain adverse disposition. The Court should find for Mr. Freestone and stay these proceedings pending the outcome of the Criminal Action.

### iii.     The public interest would be served by a stay.

Moreover, a stay of this proceeding would serve the public interest in promoting judicial economy. The Attorney General's ability to protect its interests will not be harmed by a stay of this proceeding. All defendants are under pretrial supervision, which strictly limits their contact with any alleged witnesses or victims in the cases and forbids any illegal conduct of any kind. *See, e.g.*, Criminal Action Docs. 14, 46. The alleged criminal activity is not ongoing and is nearing a year old. (Doc. 19). No evidence will be lost or destroyed due to the imposition of a stay order, as discovery is already underway in the Criminal Action and all defendants in this civil lawsuit have a duty to preserve relevant evidence. *See Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020).

On the other hand, should this action continue while the Criminal Action is ongoing, these proceedings will be unnecessarily multiplied by the defendants' invocations and resistance to discovery on Fifth Amendment grounds—prolonging the case and increasing the litigation costs and judicial labor. Further, it is possible that the Attorney General's discovery efforts may frustrate the federal government's prosecution of Mr. Freestone and his co-defendants. *Palleschi*, 2021 WL 4710773, at *2 (granting intervenor-government's request for a stay to avoid "hamper[ing]" the government's prosecution) (public has a strong interest in cases being resolved without

interfering with one another). A stay is appropriate under these circumstances.

### 4. The outcome of the Criminal Action will narrow the issues.

Finally, the Court should find that a stay is warranted because the resolution of the Criminal Action may narrow and simplify the issues. *See, for example, Transamerica Life Ins. Co. v. Brickman*, No. 615CV1919ORL41TBS, 2017 WL 10023751, at *4 (M.D. Fla. Oct. 17, 2017), where the court found that this factor weighed in favor of stay for two reasons. *First*, judicial economy weighed in favor of granting a stay where the criminal trial would have a preclusive effect on the civil case. *Id.* (citing *City of Demopolis*, 2009 WL 2059311, at *3 (S.D. Ala. July 10, 2009) (finding of guilt in criminal case could obviate need for relitigating critical question in civil case, thereby justifying stay). *Second*, in the event of a not guilty verdict in the criminal case, "the civil proceedings would be expedited because of the overlapping factual issues and likelihood that the evidence from the criminal trial would be available for use in this case." *Id.* In short, allowing the federal government to complete its prosecution efforts against Mr. Freestone and his co-defendants will ensure a likelihood of streamlining these proceedings and helping the parties evaluate the positions. *See, e.g., Palleschi*, 2021 WL 4710773, at *2 (civil case continued where, among other things, resolution of the criminal case would likely streamline the issues in the civil case). The

Court should use its inherent power to stay this case to promote judicial economy and prevent Mr. Freestone from having to choose between defending this case and the criminal jeopardy associated with any waiver of his Fifth Amendment privilege.

### III. CONCLUSION

For all these reasons, Mr. Freestone respectfully requests that the Court grant this motion and stay this case pending the outcome of the Criminal Action.

Dated: May 10, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*Attorneys for Defendant Caleb Freestone*

### Local Rule 3.01(g) Certification

I hereby certify that I conferred with counsel for the Attorney General on May 9, 2023 by email. Plaintiff's counsel opposes the relief requested herein.

By: */s/ James M. Slater*
James M. Slater

17

**Certificate of Service**

I hereby certify that on May 10, 2023, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

By: */s/ James M. Slater*
James M. Slater